838 A.2d 1180

**Clarence JAMES**

v.

**Nathaniel Lee BUTLER.**

**No. 134, Sept. Term, 2000.**

Court of Appeals of Maryland.

Dec. 18, 2003.

684

John Critzos, II (Law Offices of John Critzos, II, on brief), Oxon Hill, for petitioner.

Richard E. Schimel (Michael J. Budow of Budow and Noble, P.C., on brief), Bethesda, for respondent.

Bruce M. Bender, Van Grack, Axelson & Williamowsky, Rockville, brief of the Maryland Trial Lawyers Association in Support of petitioner, amicus curiae.

Amy Leete Leone, Charles E. Wilson, Jr., McCarthy, Wilson & Ethridge, Rockville, brief on behalf of National Association of Independent Insurers in support of respondent, amicus curiae.

Argued Before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

Maryland Code (1973, 1998 Replacement Volume) § 10–104(b) and (c) of the Courts and Judicial Proceedings Article,[1]

---

* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Code (1973, 1998 Replacement Volume) § 10–104(b)(2) and (c) of the Courts and Judicial Proceedings Article provides:
 "(b) (2) Subject to the provisions of paragraphs (1) of this subsection, the provisions of this section apply to a proceeding in:
 "(i) The District Court; or
 "(ii) A circuit court if:
 "1. The case was originally filed in the District Court;
 "2. The case was transferred from the District Court to a circuit court;
 "3. The amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action.
 "(c) *In general.-*
 "(1) A writing or record of a health care provider described in this section is admissible under this section if:
 "(i) The writing or record is offered in the trial of a civil action in the District Court or a circuit court;

for certain purposes, *see* subsection (b)(1)[2] and (2), permits

"(ii) At least 60 days, except as provided in paragraph (2) of this subsection, before the beginning of the trial, the party who intends to introduce the writing or record:

"1. Serves notice of the party's intent to introduce the writing or record without the support of a health care provider's testimony, a list that identifies each writing or record, and a copy of the writing or record on all other parties as provided under Maryland Rule 1–321; and

"2. Files notice of service and the list that identifies each writing or record with the court; and

"(iii) The writing or record is otherwise admissible.

"(2) A party who receives a notice under paragraph (1) of this subsection and intends to introduce another writing or record of a health care provider without a health care provider's testimony shall:

"(i) Serve a notice of intent, a list that identifies each writing or record, and a copy of the writing or record at least 30 days before the beginning of the trial; and

"(ii) File notice of service and the list that identifies each writing or record with the court.

"(3) The list required under paragraphs (1) and (2) of this subsection shall include:

"(i) The name of the health care provider for each writing or record; and

"(ii) The date of each writing or record of the health care provider or each date of treatment by the health care provider."

By 1999, ch. 433, a new subsection (2) was added to § 10–104(b) and former subsection (2)(ii), now subsection (3)(ii), was amended to provide:

"(ii) A circuit court if the amount in controversy in the action in the circuit court does not exceed the amount specified in § 4–401 of this article for that type of action."

The act expressly did not apply "to any case filed before October 1, 1999."

Unless otherwise indicated, future references are to Maryland Code (1973, 1998 Replacement Volume).

2. Section 10–104(b)(1) provides:

"(b) *Applicability.-*

"(1) The provisions of this section apply only to a claim for:

"(i) Damages for personal injury;

"(ii) Medical, hospital, or disability benefits under §§ 19–505 and 19–506 of the Insurance Article;

"(iii) First party motor vehicle benefits under §§ 19–509 and 19–510 of the Insurance Article; and

"(iv) First party health insurance benefits."

By 1999, ch. 433, a new subsection (2) was added to § 10–104(b). It provided:

"(2) This section does not apply to an action for damages filed under Title 3, Subtitle 2A of this article."

the admission into evidence at the trial of a civil action in the District or Circuit Court of "a writing or record of a health care provider," provided that advance notice of the intention to offer the writing or record into evidence is given and a copy of the writing or record is supplied to the opposing party. The issue in this case involves whether compliance with § 10–104 has an impact on the amount that a plaintiff who prevails following a trial in the Circuit Court may recover. Or in other words, whether that plaintiff, having taken advantage of the evidentiary shortcut provided by § 10–104(c), is precluded from recovering more than $25,000.00, the jurisdictional limit of the District Court, as prescribed by Maryland Code (1973, 1998 Replacement Volume) § 4–401 of the Courts and Judicial Proceedings Article,[3] notwithstanding the fact that the case was removed from the District Court and tried in the Circuit Court. The Circuit Court for Prince George's County concluded that Clarence James, the plaintiff and the petitioner herein, was not so limited, and it entered judgment, consistent with the jury's verdict,[4] accordingly. Addressing the appeal filed by Nathaniel Lee Butler, the defendant and respondent herein, the Court of Special Appeals disagreed. *Butler v. James,* 135 Md.App. 196, 761 A.2d 1036 (2000). It "interpret[ed] § 10–104 ... to require that, once a plaintiff has introduced medical records pursuant to the statute, recovery is limited to $ 25,000." *Id.* at 206, 761 A.2d at 1041–42. In addition to explaining that, "[t]o allow a post-trial amendment of the *ad damnum* clause to conform to the verdict would

---

**3.** Maryland Code (1973, 1998 Replacement Volume) § 4–401 of the Courts and Judicial Proceedings Article, as relevant, provides that "the District Court has exclusive original civil jurisdiction in:

"(1) An action in contract or tort, if the debt or damages claimed do not exceed $25,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract."

**4.** The petitioner filed suit in the District Court and demanded the maximum amount of damages that that court permitted. He did not amend his *ad damnum* clause when the respondent prayed a jury trial, removing the case to the Circuit Court. It was necessary, therefore, that the *ad damnum* clause be amended to conform to the jury verdict. The court granted the petitioner's motion to that effect.

defeat this requirement," *id.* at 206, 761 A.2d at 1042, the intermediate appellate court held "that, by proceeding pursuant to § 10–104, independent of the statutory limitation . . .,[the petitioner] is estopped from pursuing damages in excess of that allowed under § 4–401." *Id.* at 211, 761 A.2d at 1044. We issued the writ of certiorari at the petitioner's request, to consider the correctness of those decisions. *James v. Butler,* 362 Md. 624, 766 A.2d 147 (2001). We shall affirm. Because we agree with the Court of Special Appeals as to its first ground of decision, we do not reach the estoppel issue.

The petitioner sued the respondent in the District Court of Maryland, sitting in Prince George's County, hoping to recover damages for injuries he allegedly suffered in an automobile accident, for which he contended the respondent was at fault. The *ad damnum* of that complaint prayed $ 25, 000.00, the maximum amount allowed for actions of that kind in the District Court. The respondent prayed a jury trial, thus removing the case to the Circuit Court for Prince George's County.

Thereafter, pursuant to § 10–104, the petitioner filed notice of his intention to introduce medical records and bills and a wage and salary verification form, without a testimonial predicate being provided by a medical provider. Although the notice, which was captioned in the Circuit Court, but contained the District Court case number, was filed in the District Court, in subsequent correspondence, the petitioner acknowledged the discrepancy and stated his intention that the notice apply to the Circuit Court case. Indeed, at trial, although intending to call his treating chiropractor, the petitioner indicated his intention to proceed pursuant to § 10–104. Moreover, he offered as Plaintiff's Exhibit # 1, the notice he filed pursuant to § 10–104, explaining, "Plaintiff's Exhibit 1 was offered—was actually filed duly according to the statute. Since this was filed in District Court initially and we were brought upstairs and there has been no changes to the [*ad damnum*] pursuant to the statute." Over the respondent's objection, finding nothing in § 10–104(f) that "may be construed to limit the right of a party to: (1) Request a summons

to compel the attendance of a witness; or (2) Examine a witness who appears at trial," *Butler v. James,* 135 Md.App. at 200, 761 A.2d at 1038, the trial court admitted the § 10–104 notice and the petitioner's medical treatment records and medical bills, as well as permitted the petitioner's treating chiropractor to testify at trial. The petitioner never amended the *ad damnum* of the complaint nor indicated an intention to withdraw the § 10–104 notice or to rely on the unlimited jurisdiction of the Circuit Court.

The jury returned a verdict in favor of the petitioner for $ 7,540.91 for medical expenses, $ 2,800 for loss of earnings, and $ 300,000 for non-economic damages. Aggrieved, the respondent filed a Motion for New Trial or Remittitur. In addition to opposing the respondent's motion, the petitioner moved to amend the *ad damnum* to conform to the amount of the jury verdict. The court denied the respondent's motion and granted the petitioner's, prompting the respondent's successful appeal of the judgment to the Court of Special Appeals. As we have seen, that court reversed the trial court judgment, holding that a plaintiff who proceeded pursuant to § 10–104 thereby limited that plaintiff's possible recovery to the jurisdictional limit of the District Court. 135 Md.App. at 206, 761 A.2d at 1041–42.

In this Court, the petitioner argues that § 10–104 does not apply because the respondent stipulated to the admission of the medical records and bills and, in any event, the petitioner's treating orthopaedist testified, relying on medical reports and bills that had been authenticated by admission requests. In addition, the petitioner submits that once the respondent prayed a jury trial and the case was removed to Circuit Court, he began to utilize the discovery rules applicable to that court. Thus, he further submits:

"Butler was on notice that [the petitioner] may or may not have utilized § 10–104, given the nature and extent of the admission requests propounded. After all, what would be the purpose of requesting the authenticity of medical bills, medical reports, the expert qualifications of treating doctors, etc. if one were going to utilize § 10–104. This is trial

strategy of a party and is personal to that party. In this case, [the petitioner]."

Alternatively, the petitioner maintains that even if § 10–104 applies to the case, and in the circumstances *sub judice,* there exists no inconsistency between it and Maryland Rule 2–341(b), pursuant to which a trial judge may permit a party to amend a pleading after trial has begun. Rule 2–341(b) provides:

"b) Within 15 days of trial date and thereafter.—Within 15 days of a scheduled trial date or after trial has commenced, a party may file an amendment to a pleading only by written consent of the adverse party or by leave of court. If the amendment introduces new facts or varies the case in a material respect, the new facts or allegations shall be treated as having been denied by the adverse party. The court shall not grant a continuance or mistrial unless the ends of justice so require."

In *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995), this Court held that "the *ad damnum* does not inherently limit the power of the jury to render a verdict and does not inherently limit the power of the court to enter a judgment." *Id.* at 427, 663 A.2d at 1262. Following the decision in that case, in 1998, Maryland Rule 2–341 was amended to add the following Committee Note immediately after section (b): "By leave of court, the court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned."

Relying on *Falcinelli* and the Committee Note, the petitioner argues that a trial judge may permit the amendment of the *ad damnum* post verdict, notwithstanding § 10–104. He elucidates this is so because § 10–104 is procedural, neither creating nor expanding any substantive right. He offers in support of this proposition that

"i. There is no mandate that any verdict in a Circuit Court be reduced to the amount in controversy as is the case for other damage caps;

"ii. § 10–104 would not apply in a foreign Court, if and in the event an accident occurred in the state of Maryland but [was] litigated out of state . . . ;

"iii. § 10–104 does not expand or contract the underlying cause of action;

"iv. In the case of a Maryland resident who was involved in an out of state accident and the claim [was] litigated in Maryland, § 10–104 would apply to the proceedings in this state, yet the damages of the situs of the accident would be available to the plaintiff."

(Footnote omitted).

The petitioner finally submits, "[s]ince § 10–104 and Rule 2–341 are both procedural, Rule 2–341 would take precedence, if the two are in conflict." He relies on the fact that the Rule was amended subsequent to the enactment, and pertinent amendment, of the statute—the comment was added to the Rule in 1998, while § 10–104 was initially enacted in 1996, *see* 1996 Md. Laws ch. 554, and the pertinent amendment made in 1997. *See* 1997 Md. Laws ch. 443. The petitioner also relies on *Penfield Co. of California v. S.E.C.*, 330 U.S. 585, 589 n. 5, .67 S.Ct. 918, 921 n. 5, 91 L.Ed. 1117, 1122 n. 5 (1947) ("Where a Rule of Civil Procedure conflicts with a prior statute, the Rule prevails."); *Federal Sav. & Loan Ass'n v. Equitable Sav. & Loan Ass'n*, 261 Md. 246, 252–253, 274 A.2d 363, 367 (1971) citing *Hensley v. Bethesda Metal Company*, 230 Md. 556, 558, 188 A.2d 290, 291 (1963), ("the Maryland Rules of Procedure . . . would apply despite a prior statute to the contrary and until a subsequent statute would repeal or modify the Rule"); *Nationwide Mut. Ins. Co. v. Webb*, 44 Md.App. 547, 558 n. 1, 409 A.2d 1127, 1132 n. 1 (1980), *rev'd on other grounds*, *Nationwide Mutual Ins. v. Webb*, 291 Md. 721, 436 A.2d 465 (1981) ("To the extent that this procedural rule conflicts with the statutory definition of such rules as 'condition precedent,' the conflict must be resolved in favor of the rule by virtue of its subsequent superseding of the statute on a procedural issue.") (citing *Meloy v. Squires*, 42 Md. 378 (1875) and *Gabelein v. Plaenker*, 36 Md. 61 (1872)). See also Md. Const. Art. 4 § 18(a), which, as relevant, provides:

"(a) The Court of Appeals from time to time shall adopt rules and regulations concerning the practice and procedure in and the administration of the appellate courts and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law."

Not unexpectedly, the respondent takes the opposite position. Not only does he argue that § 10–104 applies to the case *sub judice,* but he asserts that its appropriate application to the facts and circumstances herein presented requires an affirmance of the judgment of the Court of Special Appeals. As he did in the intermediate appellate court, *see James,* 135 Md.App. at 201, 761 A.2d at 1039, the respondent submits:

"The legislative history of Annotated Code of Maryland, Courts and Judicial Proceedings § 10–104 ... clearly demonstrates that the Maryland General Assembly has *never* intended a procedure which would permit the introduction of medical bills or records at trial without a physician's testimony in either [D]istrict or [C]ircuit court cases in which the amount in controversy exceeded the jurisdictional limits of the [D]istrict [C]ourt. Once the trial court in the present case allowed [the petitioner] to change the 'amount in controversy' from his original *ad damnum* of $ 25,000 to the jury verdict of $ 310,340.91, that is precisely what occurred. The trial court's decision to allow a Rule 2–341 amendment of the *ad damnum* under the facts of this case constitutes a failure to acknowledge and apply the clear intent of this statute."

As indicated, the respondent relies on the legislative history of § 10–104. Of particular importance, in that regard, he insists, citing Department of Legislative Reference Bill Summary,[5] was the fact that, as originally proposed and enacted, in

---

**5.** According to the Department of Legislative Reference Bill Summary, "[House Bill 1431] makes a medical, dental, or hospital writing or record that documents a medical, dental condition, opinion, or treatment, or the billing for medical, dental, or hospital expenses admissible in civil action in the District Court to prove the existence of the

1996, the relaxed standard for the admission of medical records and bills was intended to apply only in the District Court. The statute was amended the next year. The respondent points out that the amendment originally proposed, *see* H.B. 423, would have permitted the use of the § 10–104 procedure in "a proceeding in the District Court or a Circuit Court" to admit medical records or writings "offered in the trial of a civil action in the District Court or a Circuit Court," without regard to the amount in controversy; H.B. 423, like the recently enacted § 10–104, which had no need for it, did not then contain a provision prescribing a limitation on the amount in controversy. However, as enacted the respondent emphasizes that the bill not only contained a provision limiting the cases to which it applied to those involving an "amount in controversy in the action in the circuit court [that] does not exceed the amount specified in § 4–401 of [the Courts] article for that type of action," but it required the action to have been filed in the District Court and been transferred to the Circuit Court. Finally, while acknowledging its inapplicability to the case *sub judice*, the respondent notes that as a result of the 1999 amendment to § 10–104, filing in the District Court is no longer a prerequisite to the use of § 10–104, but that the amount in controversy limitation remains one; effective October 1, 1999, *see* § 10–104(b)(2)(ii), its use is permitted in "[a] circuit court if the amount in controversy does not exceed the amount specified in § 4–401 of [the Courts] article for that type of action."

Viewing § 10–104 from its inception to its 1998 form, the respondent maintains, buttresses his interpretation of the statute. He posits:

"The original statute was intended as a boon to the plaintiffs' bar by allowing cases of limited value to be litigated in the [D]istrict [C]ourt in such a manner that the costs of trial would not be prohibitive. In order to eliminate that benefit,

---

condition, the opinion, the necessity and providing of treatment, or the amount, fairness, and reasonableness of the charges ... without first authenticating the document through testimony."

the defense bar could force the plaintiff to incur the cost of proving medical causation and damages by demanding a jury trial and thereby moving the case to [C]ircuit [C]ourt, where the statute no longer applied. To counteract that manuever, the General Assembly extended the applicability of the statute to cases which arrived in [C]ircuit [C]ourt in that manner. Finally, by permitting the use of this statute in either [D]istrict or [C]ircuit court regardless of where it originated, the General Assembly recognized that what was critical was to permit cases in which the 'amount in controversy' was of limited value to be litigated at a lesser cost than those in which the 'amount in controversy' was of significant value. The General Assembly has consistently set the bar for the evidentiary short-cut of § 10–104 at the jurisdictional limits of the [D]istrict [C]ourt set forth in Courts and Judicial Proceedings § 4–401."

This case is about the meaning and, thus, the effect, of § 10–104(b). Determining whether utilizing the procedure prescribed by § 10–104(b) limits the amount of recovery a plaintiff may receive involves statutory construction, the goal of which is to determine the intention of the Legislature in enacting it, and which, in turn, is governed by well settled canons, which this Court has enumerated on many occasions. *Dyer v. Otis Warren Real Estate Co.*, 371 Md. 576, 580–81, 810 A.2d 938, 941 (2002).

The inquiry into legislative intent begins with the words of the statute and when the words of the statute are clear and unambiguous, according to their commonly understood meaning, ordinarily ends there, as well. *Mayor & City Council of Baltimore et al. v. Chase et al.*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000); *Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 578–79, 683 A.2d 512, 517 (1996); *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448, 451 (1994); *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753, 755 (1993); *Harris v. State*, 331 Md. 137, 145–46,

626 A.2d 946, 950 (1993). "Where the statutory language is plain and unambiguous, a court may neither add nor delete language so as to 'reflect an intent not evidenced in that language,'" *Chesapeake and Potomac Telephone Co.*, 343 Md. at 579, 683 A.2d at 517, quoting *Condon, supra*, 332 Md. at 491, 632 A.2d at 755, and may not construe the statute with "'forced or subtle interpretations' that limit or extend its application." *Id.* (quoting *Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 73, 517 A.2d 730, 732 (1986)). In addition, we have made clear that, whenever possible, a statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory. *Dyer v. Otis Warren Real Estate Co.*, 371 Md. at 581, 810 A.2d at 941; *Buckman, supra*, 333 Md. at 524, 636 A.2d at 452; *Condon, supra*, 332 Md. at 491, 632 A.2d at 755. Moreover, even when the ordinary and common meaning of the words used a statute are clear and unambiguous, we have also recognized that, "[n]evertheless, 'in the interest of completeness . . . we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account.'" *Schuman, Kane, Felts & Everngam v. Aluisi*, 341 Md. 115, 119, 668 A.2d 929, 931–32 (1995), quoting *Harris*, 331 Md. at 146, 626 A.2d at 950. We have made clear, however, that it is a confirmatory process, not one undertaken to contradict the plain meaning of the statute. *See Chase*, 360 Md. at 131, 756 A.2d at 993, citing *Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature.").

█ The clear and unambiguous language of § 10–104(b)(2) leaves no doubt as to its meaning, to provide an evidentiary shortcut for the introduction of, and, thus, a more inexpensive way of proving, medical records and bills. Medical records and bills may be admitted into evidence without a testimonial predicate only when § 10–104(c) is complied with and the amount in controversy does not exceed the jurisdictional amount of the District Court.

■ There can be no question that under subsection (b)(2)(i), proceedings in the District Court that remain, and are concluded, in that court can result only in a recovery within the jurisdiction of that court. Subsection (b)(2)(ii) is similarly clear. By its clear and express terms, "the provisions of this section [10–104] apply to a proceeding" that meets the requirements of subsection (b)(2). Under that subsection, medical records and bills, in the category of cases to which § 10–104 relates, *see* subsection (a), are admissible, pursuant to subsection (b)(3), in a Circuit Court case that originated in the District Court and in which the amount in controversy does not exceed the amount specified in § 4–401 of the Courts and Judicial Proceedings Article for that type of action. Thus, in order to be able to take advantage of the evidentiary shortcut offered by § 10–104(c), the proceeding must be one that either is tried in the District Court or, if tried in the Circuit Court, originated in the District Court, but transferred to the Circuit Court, and involves a recovery that does not exceed the jurisdictional limit of the District Court.

■ The converse likewise must be true: a proceeding that does not satisfy the requirements prescribed by subsection (b)(2) does not qualify for the evidentiary shortcut. If it were otherwise, § 10–104(b) would be of little, or no, effect. Consequently, before the amendment of § 10–104 in 1999, the evidentiary shortcut could not be utilized, whatever the amount in controversy, in a case originating in the Circuit Court.

The legislative history of § 10–104 confirms this interpretation. As indicated, the statute was enacted in 1996. At that time, there was no doubt that it applied only in cases in which the amount in controversy was within the jurisdictional limit of the District Court, for the medical records and bills had to be offered in a trial in the District Court. Section 10–104(b)(1) then provided:

"(1) A medical, dental, or hospital writing or record described in this section is admissible under this section if:

"(i) The writing or record is offered in the trial of a civil action in the district court;

"(ii) At least 30 days, except as provided in paragraph (2) of this subsection, before the beginning of the trial, the party who intends to introduce the writing or record files with the clerk of the District Court and serves on all other parties as provided under Maryland Rule 1–321:

"1. Notice of the party's intent to introduce the writing or record without the support of a physician's, dentist's, or hospital employee's testimony; and

"2. A copy of the writing or record; and

"(iii) The writing or record is otherwise admissible."

When § 10–104 was amended the next year, the General Assembly did not simply provide for the admission of medical records and bills in the Circuit Court action, as the amendment, as introduced, proposed to do. Rather, it required that the action originate in the District Court and be transferred to the Circuit Court, and it inserted the requirement that the amount in controversy not exceed the jurisdictional limit of the District Court. Although not applicable to the case herein, we have seen yet another amendment to § 10–104 in 1999 removed the requirement of a District Court origin, but retained the reference to the District Court jurisdictional amount.

Here, the petitioner maintains that § 10–104 does not apply to this case. His basis for that conclusion is more or less fact based; except for the contention that live expert testimony rendered the statute inapplicable, a proposition with which the trial court agreed, see 135 Md.App. at 207–08, 761 A.2d at 1042,[6] the petitioner's position did not, and does not now

---

6. Rejecting the respondent's argument that § 10–104 applied despite expert testimony having been presented, the trial court reasoned:

"[T]he [respondent's] counsel wrote on May 18, 1998:

'I think the simplest thing for us to do is to agree that the 10–104 statement will come in if there is no live medical testimony. Otherwise, those portions of [the § ] 10–104 [statement] covered by the live testimony would be submitted through the witness.'

... "The [petitioner] did, in fact, call the treating chiropractor, Michael Fadorsik [sic] as a witness. His records, as well as other

depend on the interpretation of § 10–104(b). As he did in the intermediate appellate court, he argues that although filed in the District Court, § 10–104(b) does not apply to this case because the notice that section requires be given was never filed in the Circuit Court, the medical records and bills were introduced pursuant to stipulation, rather than pursuant to § 10–104(b), any error made by the trial judge in admitting the petitioner's chiropractor was "harmless at best," and the respondent "was on notice that [the petitioner] may or may not have utilized § 10–104, given the nature and extent of the admission requests propounded." The Court of Special Appeals rejected each of these arguments.[7] We agree with that court.

---

medical records of [the petitioner] were admitted into evidence, over [the respondent's] objection. He objected because the chiropractor who generated and used the records was present to testify. . . .
"The [c]ourt finds that [the petitioner] disclosed at the pre[-]trial conference that he intended to call the chiropractor. . . . The chiropractor testified, and was cross-examined as to his own records, and the other records upon which he relied. Since there was in fact court testimony concerning the records, [§ ] 10–104 does not apply to the facts of this case."
*Butler v. James,* 135 Md.App. 196, 207–08, 761 A.2d 1036, 1042 (2000)

7. Acknowledging that the § 10–104(c) notice was indeed filed in the District Court, the Court of Special Appeals pointed out that it was "transferred to the [C]ircuit [C]ourt as a part of the record, pursuant to § 4–402(e)(2)," that the petitioner's counsel referred to "the admissibility of my § 10–104 statement" when corresponding with the respondent's counsel, that all parties and the court referred to the "10–104" statement and that the petitioner's counsel's argument as to the admissibility of the record and bills included quotes from § 10–104. *Butler v. James,* 135 Md.App. at 206, 761 A.2d at 1042. Further explicating its rejection of the mis-filing argument, the intermediate appellate court stated:

"Courts and Judicial Proceedings § 4–402(e)(2) provides that, when a party files a timely demand for a jury trial, 'jurisdiction is transferred forthwith and the record of the proceeding shall be transmitted to the appropriate court.' Here, that court was the Circuit Court for Prince George's County, and the record, including appellee's § 10–104 notice, was so transmitted. The transfer of jurisdiction to the circuit court did not render all proceedings below a nullity; for example, appellee was not required to file a new complaint. Appellee's notice of intent to introduce the medical records without supporting testi-

■ Alternatively, the petitioner believes, and argues, that there is no inconsistency between § 10–104(b) and Maryland Rule 2–341. Thus, he asserts that the statute and the rule can, and does, co-exist, a position that the trial court shares. As we have seen, although determining that § 10–104 did not apply because the petitioner's treating chiropractor testified, the court opined:

"Even if [§ ] 10–104 did apply[,] the court believes that Rule 2–341, which provides for 'great liberality in the allowance of amendments,' *Goldstein v. Peninsula Bank*, 41 Md.App. 224, 396 A.2d 542 (1979)[,] would permit the court to grant the [petitioner's] post[-]trial motion for amendment of the *ad damnum* clause."

135 Md.App. at 208, 761 A.2d at 1043.

■ Underlying the petitioner's analysis on this point is his conclusion that both § 10–104 and Rule 2–341 are procedural and that there is a difference between the "amount in controversy" and the amount of the verdict returned by a jury. We are not persuaded. While § 10–104 may be procedural in the sense that it is concerned only with evidentiary matters and prescribes prerequisites for obtaining the admission of medical records and bills in an expedited and inexpensive manner, Rule 2–341 is purely procedural by prescribing, as it does, the procedure for amending pleadings post verdict, and they are not inherently in conflict, they address different issues and, in this case, they are in direct conflict. Section 10–104(b) prescribes the circumstances under which an evidentiary shortcut

---

mony was thus effective in the circuit court and § 10–104 is applicable to this appeal."
*Id.* at 206–07, 761 A.2d at 1042.

The Court of Special Appeals rejected the stipulation argument on the basis that, "[t]o the extent that [the respondent] stipulated to the documents' admissibility, he stipulated that they were admissible pursuant to § 10–104." *Id.* at 207, 761 A.2d at 1042. The harmless error argument was premised on the petitioner's belief that the admissibility of the records was otherwise established by the pretrial admissions and the trial testimony of the petitioner's treating chiropractor. The intermediate appellate court noted that "[the respondent] does not allege ... that the trial court erred in admitting the documents. The harmless error doctrine is therefore inapplicable." *Id.*

may be used for the introduction of medical records and bills. The "amount in controversy" provision is one of those circumstances and, thus, by its inclusion, § 10–104(b) delimits, places a limitation on, the amount that a plaintiff who chooses to use the shortcut may recover. Rule 2–341, on the other hand, insofar as the post verdict pleading amendment relates to the *ad damnum*, is concerned only with the amount of recovery; it does not address the amount in controversy. Indeed, to trigger the rule, there necessarily must be a discrepancy between the amount requested and the amount awarded. However there is no express or implied limitation on either, it being within the court's discretion to allow or deny the requested amendment.

To be sure, as indicated, the Rule and § 10–104 can co-exist; each can be given effect in the same case. For example, that could occur when a plaintiff utilizing § 10–104(c) sues for an amount less than the jurisdictional limit of the District Court and recovers an amount greater than the *ad damnum* but still within the jurisdictional limit. It could also occur if the amount recovered was more than the jurisdictional limit. Clearly, at least as to that amount that did not exceed the jurisdictional limit, even though above the amount demanded in the *ad damnum*, post verdict amendment of the *ad damnum* would be proper.

As here, the situation is quite different when the amount sued for is the District Court jurisdictional limit, the plaintiff has utilized § 10–104(c) to obtain admission of the medical records and the jury has returned a verdict in excess of the amount prayed. Under these circumstances, there is a clear incompatibility; effect simply cannot be given to both. This is so because, as we have held, § 10–104 permits medical records and bills to be admitted pursuant to the expedited procedure enunciated in § 10–104(c), but only when the amount in controversy, measured by the amount of damages claimed, does not exceed $ 25,000, the jurisdictional limit of the District Court, while Rule 2–341 permits the *ad damnum*, whatever the amount of damages alleged, to be amended to conform to the amount of the damages that the jury actually found. To

permit the amendment of the *ad damnum* in this, or a similar, case would render § 10–104 completely nugatory; § 10–104(b) would be deprived of any meaning and would, therefore, be completely ineffective. Moreover, it would have the effect of converting a case that all parties acknowledged to be a proper one for the use of the evidentiary shortcut prescribed by § 10–104(c) into one in which it would not apply. As the Court of Special Appeals aptly put it:

> "The most likely reason for this requirement [that the evidentiary shortcut apply only to cases in which the amount in controversy does not exceed $25, 000] is the policy decision that, when the defendant is exposed to damages greater than $25,000, the plaintiff should be required to authenticate the records through live testimony. The requirement would fail to serve its purpose, however, if records were introduced at trial under § 10–104 because the plaintiff plead damages of $25,000 or less, but the defendant was exposed to a potential verdict in excess of that amount."

135 Md.App. at 205, 761 A.2d at 1041.

JUDGMENT AFFIRMED, WITH COSTS.